UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                                         :

INTL FCSTONE MARKETS, LLC,            :

                                          :         **ORDER AND OPINION**
                                          :         **GRANTING IN PART AND**
                      Plaintiff, :         **DENYING IN PART MOTION**
         -against-                    :         **TO DISMISS**
                                          :         **COUNTERCLAIMS AND**
INTERCAMBIO MEXICANO DE COMERCIO   :         **STRIKE AFFIRMATIVE**
S.A. DE C.V.,                                  :         **DEFENSES**
                                          :
                                          :         18 Civ. 1004 (AKH)
                          Defendant.  :
---------------------------------------------------------- X

        ALVIN K. HELLERSTEIN, U.S.D.J.:

         Plaintiff INTL FCStone Markets LLC, ("Plaintiff"), a financial services firm,

brings this suit for breach of contract against its former client, Defendant Intercambio Mexicano

de Comercio S.A. de C.V. ("Defendant").  *See* Second Amended Complaint ("SAC"), ECF No.

68.  Plaintiff alleges that Defendant breached the terms of their trading agreement by failing to

pay margin calls, while Defendant alleges that Plaintiff wrongfully liquidated its account.  The

Parties previously cross-moved for judgment on the pleadings, *see* ECF Nos. 52, 54, and I

granted in part and denied in part those motions.  *See* ECF No. 65.  I ordered Plaintiff to file an

amended complaint alleging the demands made for margin.  I struck all but two of Defendant's

counterclaims and affirmative defenses, sustained its counterclaim for breach of contract and

gave leave to allege a defamation claim.  Thereafter, Plaintiff filed the SAC, and Defendant, its

Answer.  ECF Nos. 68-69.

         Before me now is Plaintiff's Motion to Dismiss Counterclaims (R. 12(b)(6)) and

Strike Affirmative Defenses (R. 12(f)).  ECF No. 74.  The Motion is granted in part and denied

in part.

**BACKGROUND**

A.      Undisputed Facts

Plaintiff, a financial services firm, and Defendant entered into a Terms of

Business Agreement (the "Agreement") on October 24, 2017.  SAC ¶ 9; Answer ¶ 9; SAC,

Exhibit A ("Ex. A"), ECF No. 68-1 (copy of the Agreement).  Pursuant to the Agreement,

Plaintiff agreed to provide trading services relating to swap and over-the-counter derivatives, and

Defendant agreed to pay the amounts that were due.  SAC ¶ 10, Answer ¶ 10.  The Agreement

provided for confirmations of trades by email, and that, after two-business days to review the

trades and confirm them, Defendant was "deemed to have accepted all terms of [a] Confirmation

absent manifest error."  Ex. A. ¶ 1.5.  Margin calls had to be satisfied no later than 12:00 noon

New York time on the next business day following the margin call.  *Id.* ¶¶ 2.3, 2.4.  The

Agreement further provided remedies in the event of a party's failure to pay:

> Upon an Event of Default, [including failure to pay,] the Performing Party may do one or
> more of the following with respect to the Defaulting Party:
>
> (a) Withhold or suspend all payments to the Defaulting Party required hereunder; and
>
> (b) Upon written notice to the Defaulting Party, which notice shall be given not less than
> two Business Days and shall not exceed thirty (30) Business Days' prior to the Early
> Termination Date, designate in such written notice an Early Termination Date with
> respect to any or all Transactions outstanding at the time immediately preceding the
> Early Termination Date . . . .  Neither Party shall have any obligation with respect to a
> Terminated Transaction other than an obligation to pay a Net Settlement Amount if
> applicable.

*Id.* ¶ 5.1.  The Agreement defined "Early Termination Date" as "a date for termination of the

Agreement and all the Parties' obligations under the same, other than the obligations set forth in

Sections 5.3 (Net Settlement Amount) and 5.4 (Setoff) of the Agreement."  *Id.* Ex. A:

Definitions.  Net Settlement Amount was defined as "the single liquidated amount payable by

one Party to the other, following the occurrence or designation of an Early Termination Date,

after netting [relevant costs, damages, and unpaid amounts]." *Id.* Ex. A: Definitions.  As to Net

Settlement Amount, Section 5.3 provided, in relevant part:

> Upon the occurrence or designation of an Early Termination Date pursuant to Section 5.1(b), the Performing Party shall compute and shall notify the Defaulting Party of the Net Settlement Amount.

*Id.* ¶ 5.3.

On December 11, 2017, Plaintiff emailed Defendant a margin call for

$408,980.74 and stated that the margin call had been outstanding for 4 days.  SAC ¶ 24; SAC,

Exhibit D, ECF No. 68-4; Answer ¶ 24.  Defendant paid $50,000 by wire on December 11, 2017.

SAC, Exhibit E, ECF No. 68-5.

On December 12, 2017, Plaintiff emailed Defendant a written Notice of Failure to

Pay, stating that "an Event of Default exist[ed] due to a failure to make a payment of

$346,275.50,[1] pursuant to Article 2.4 of the [Agreement]."  *See* SAC, Exhibits E, ECF No. 68-5,

Exhibit F, ECF No. 68-6.  The Notice further stated that "if payment [wa]s not made

immediately an Early Termination Date [would] be designated with respect to any and all

Transaction outstanding pursuant to Article 5.1(b) of the TOB and the account [would] be

liquidated."  Exhibit F.  Defendant claims not to have received the Notice and did not pay the

margin call.  SAC ¶¶31–32; Answer ¶¶ 31–32.  Plaintiff followed with additional margin calls,

but Defendant did not respond, and on December 22, 2017, Defendant's positions were

liquidated.

On December 29, 2017, Plaintiff emailed a "Second Notice of Net Settlement

Amount," advising Defendant that, pursuant to Article 5.3 of the Agreement, $494,500.50, was

---

[1] Defendant complains that Plaintiff never made, and provided no record evidence of, a margin call in the amount of $346,275.50.  *See* Opposition to Motion to Dismiss ("Opp."), at 3 (arguing that Plaintiff produced a default notice but failed to produce a corresponding margin call in the same amount).

due and payable in full by January 2, 2018.  SAC ¶¶ 51–53; SAC, Exhibit H, ECF No. 68-8.

Plaintiff's notice showed the details resulting in that amount.

Defendant did not pay and objected to Plaintiff's liquidations of Defendant's

positions.  SAC ¶¶ 54–55; Answer ¶¶ 54–55.  Plaintiff then filed this lawsuit.  Defendant

admitted the Agreement, denied breach, and alleged that it had performed all its contract

obligations.

B.      Defendant's Affirmative Defenses and Counterclaims

Defendant asserts three affirmative defenses and counterclaims: (1) Plaintiff's

Violation of Paragraph 5.1(b) of the Agreement; (2) a claim for damages refunding the money

Defendant deposited into the account, fees and commissions charged, and profits that reasonably

would have been realized but for the liquidation; and (3) defamation.

1.      Plaintiff's Violation of Paragraph 5.1(b)

Defendant alleges that notwithstanding Plaintiff's contractual right to set margin

at its sole discretion, it could not liquidate Defendant's account without setting an Early

Termination Date in its Notice of Default/Failure to Pay, advising Defendant when defendant's

account will be liquidated if defendant fails to pay the amount demanded.  Answer ¶ 67.

Plaintiff's liquidation without designating an Early Termination Date, Defendant alleges, caused

it to suffer damages of $359,000, plus fees, commissions, interest and "the profits defendant

reasonably would have realized in its account, in excess of $1,625,000, had plaintiff not []

liquidated defendant's account, plus interest."  *Id.* ¶ 71.

2.      Second Counterclaim

Defendant's second counterclaim relies on the same factual allegations, seeks the

same damages, and is duplicative of its first counterclaim for breach.

3.      Counterclaim for Defamation

Defendant alleges that Plaintiff "communicat[ed] to third-parties, whom plaintiff knew had business dealings with defendant, the untrue statements that defendant was in default in its obligations to plaintiff, that defendant did not honor its debts or obligations to plaintiff, and that defendant could not be relied upon to meet its contractual obligations." *Id.* ¶ 77. The Answer alleges that Plaintiff made statements to "Biocafcao, S.A., Av Independencia, Plaza Luperon 2Do Nivel, Local 69, El Pedregal, Santo Domingo, Republica Dominicana 11107, and Ecuador Kakao Processing Proecuakao S.A., Km 14.5 Via a Daule, Guayaquil, Ecuador." *Id.* Defendant claims damages in excess of $1,000,000."

## DISCUSSION

I. Legal Standard

A. Motion to Strike Affirmative Defenses

Under Rule 12(f), either party may move to strike from a pleading "any insufficient defense or any . . . immaterial [or] impertinent" allegations. Fed. R. Civ. P. 12(f). "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (internal quotation marks omitted). Motions to strike affirmative defenses are generally disfavored. *See Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986). In considering such a motion, courts draw all reasonable inferences in favor of the nonmoving party. *See Erickson Beamon Ltd. v. CMG Worldwide Inc.*, No. 12-CV-5105, 2014 U.S. Dist. LEXIS 112437, at *5 (S.D.N.Y. Aug. 13, 2014); *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07-CV-9580, 2008 U.S. Dist. LEXIS 92988, at *4 (S.D.N.Y. Nov. 5, 2008). For a plaintiff to prevail on a motion to

strike an affirmative defense: "(1) there must be no question of fact that might allow the defense

to succeed; (2) there must be no substantial question of law that might allow the defense to

succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Coach, Inc. v.*

*Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010); *accord. Cognex Corp. v. Sys., Inc.*,

990 F. Supp. 2d 408, 418 (S.D.N.Y. 2013).  District courts enjoy broad discretion in granting

motions to strike, *see Orientview Techs, LLC v. Seven for All Mankind, LLC*, No. 13-CV-0538,

2013 U.S. Dist. LEXIS 111107, at *3 (S.D.N.Y. Aug. 7, 2013), but courts "should not tamper

with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United*

*Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Although district courts in this Circuit have disputed whether the plausibility

standard of *Twombly* and *Iqbal* applies equally to affirmative defenses, the majority have held

that it does not.  *See Hon-hai Precision Indus. Co., Ltd. v. Wi-LAN, Inc.*, No. 12-CV-7900, 2013

U.S. Dist. LEXIS 74818, at *9 (S.D.N.Y. May 28, 2013).  Fed. R. Civ. P. 8(c) requires only that

defendants "state" their affirmative defenses, a less onerous standard than Rule 8(a)(2)'s

requirement that a pleadings "show" the pleader's entitlement to relief.  *See Scott v.*

*WorldStarHipHop, Inc.*, No. 10-CV-9538, at *2 (S.D.N.Y. Nov. 14, 2012).  So long as a

defendant states an affirmative defense in accordance with Rule 8(c), district courts ordinarily do

not strike the defense unless "[t]here is no question of law that would allow [the] defense to

succeed," *see Erickson Beamon Ltd.*, 2014 U.S. Dist. LEXIS 112437, at *11, and "inclusion of a

defense that must fail as a matter of law prejudices the plaintiff because it will needlessly

increase the duration and expense of litigation." *Coach, Inc.*, 756 F. Supp. 2d at 426.

Notwithstanding the fact that striking affirmative defenses is generally disfavored, however, such

motions are appropriately granted when "the insufficiency of the defense is clearly apparent on

the face of the pleading." *Wireless Ink Corp. v. Facebook, Inc.*, 787 F. Supp. 2d 298, 314

(S.D.N.Y. 2011) (internal quotation marks omitted).

B. Motion to Dismiss Counterclaims

Fed. R. Civ. P. 13 governs counterclaims. A motion to dismiss a counterclaim is

evaluated under the same standard as a motion to dismiss a claim in the complaint. *See GEOMC*

*Co.*, 918 F.3d at 101 (finding that district courts may evaluate the legal sufficiency of a

counterclaim properly challenged in a Rule 12(b)(6) motion).

When considering a motion to dismiss, a court accepts as true all well-pleaded

factual allegations and draws all reasonable inference in favor of the non-moving party. *See Trs.*

*of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2016).

However, it gives "no effect to legal conclusions couched as factual allegations." *Stadnick v.*

*Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, (2007)). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* A counterclaim is facially

plausible when "the [counterclaimant] pleads factual content that allows the court to draw the

reasonable inference that the [original claimant] is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must

"possess enough heft to show the pleader is entitled to relief." *Twombly*, 550 U.S. at 557

(cleaned up). "In determining the adequacy of the [counterclaim], the court may consider any

written instrument attached to the [Answer or counterclaim] as an exhibit or incorporated in the

complaint by reference, as well as documents upon which the [Answer or counterclaim] relies

and which are integral . . . ." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 532–33 (S.D.N.Y. 2017).

II.     Analysis

Defendant alleges three "affirmative defenses or counterclaims," all of which seek damages from Plaintiff. Affirmative defenses are excuses or justifications in defense of a party's actions or inaction, which enable a defendant to avoid liability. An affirmative defense does not entitle a defendant to seek any further relief from a plaintiff. A counterclaim, however, does enable a defendant to seek relief, damages or otherwise. Accordingly, I consider whether each asserted affirmative defense or counterclaim is a ground for Defendant to avoid liability or plausibly states a claim for relief.

A.     Breach of Contract and Second Affirmative Defense and Counterclaim

As its first affirmative defense and counterclaim, Defendant states Plaintiff's breach of the Agreement in failing to specify an Early Termination Date. Because its second affirmative defense and counterclaim are duplicative, I consider them together.

Defendant plausibly alleges that Plaintiff's failure so to specify did not follow the provisions of the Agreement. It is not clear, however, if setting an Event of Default date is a precondition to liquidate an overdue margin position. The affirmative defense raises a question of contract interpretation that cannot be resolved on a Rule 12(b) motion. Extrinsic evidence, if any, and, possibly, expert's testimony may be needed.

To the extent that Defendant intends to allege waiver, I ruled on, and rejected, this affirmative defense in my prior Order. *See* ECF No. 65 ¶ 4 ("Paragraph 8.2 of the Agreement plainly contains a no-waiver provision which states that no past waiver shall be construed as a

waiver of any other default." (citing *Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d

127, 137 (S.D.N.Y. 2016) (finding that no-waiver clauses are enforceable under New York

law)).  Because Defendant's second affirmative defense is either duplicative of its first defense

or attempts to revive the already-stricken defense of waiver, Defendant's second affirmative

defense is stricken.

As to the counterclaim, Defendant does not plausibly allege how damages could,

or did, result.  A claim for breach of contract under New York law requires allegations of: (1) an

agreement, (2) adequate performance by one party, (3) breach by the other party, and (4)

resulting damages.  *See Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir.

2011) (cleaned up); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008); *see also*

*McCormick v. Favreau*, 82 A.D. 3d 1537, 1541 (N.Y. App. Div. 2011); *accord. Twinkle Play*

*Corp. v. Alimar Props., Ltd.*, No. 2018-10896, 186 A.D.3d 1447, N.Y. App. Div. LEXIS 5008, at

*1 (N.Y. App. Div. 2d Dep't Sept. 16, 2020).

I previously sustained Defendant's counterclaim for breach of contract based

upon the insufficiency of the Amended Complaint's factual allegations regarding a margin call

and other "underlying factual issues which need to be explored, such as contractual definitions

and whether there were any negotiations or discussions between the parties."  ECF No. 65 ¶ 6.  I

further indicated that "[t]here may also be a need for expert testimony regarding the practices of

margin trading[.]"  *Id.*  In its Motion, Plaintiff argues that Defendant's counterclaim for breach

now must fail because of its (second) amended pleadings.  The SAC, however, does not preclude

the counterclaim, provided that Defendant plausibly alleges damages.

The Answer states that Defendant is entitled to: (1) a refund of the $359,000

which Defendant deposited into the account; (2) a refund of the fees and commissions charged

against or deducted from Defendant's account; and (3) the profits Defendant would have realized in its account, in excess of $1,625,000.  Answer ¶ 71.

Defendant offers no facts establishing the basis for its calculations, nor how Plaintiff's failure to specify an Early Termination would or could have caused these damages. As to the claim for $359,000, Defendant wired Plaintiff two payments, in the amounts of $209,000 and $50,000, in response to Plaintiff's margin calls.  Since Defendant was obligated under the Agreement to pay margin calls, and the wire transfers satisfied this obligation, Defendant's allegation that it is entitled to a refund of these monies is implausible.  Defendant also offers no explanation why it is entitled to an additional $100,000.  As to the claim for fees and commissions, Defendant does not state which fees and commissions it seeks to recover.  It is implausible that Defendant would be entitled to recover all fees and commissions associated with all transactions in its account.  Finally, as to its claim for $1,625,000 lost profits, Defendant again offers no basis for this calculation.  Moreover, given that Defendant's positions were liquidated based upon stop orders, triggered by falling stock prices, it is implausible that the liquidation caused Defendant losses.  By all accounts, had Defendant's positions not been liquidated, it would have sustained greater losses.  Because I find that Defendant plausibly alleges breach but fails to plausibly allege damages, the counterclaim is dismissed with leave to amend.

2.      Defamation

Defendant alleges defamation as its third affirmative defense and counterclaim. Notwithstanding the threadbare allegations, which include no information about when or where the allegedly defamatory statements were made, nor provide any specificity as to the content of the statements, it is unclear from the face of the pleadings how Plaintiff's alleged defamatory

statements would excuse or justify Defendant's failure to pay in accordance with the terms of the

Agreement.  As noted above with respect to Defendant's affirmative defense that Plaintiff's

breach of contract is a defense, that technical defense, if found available, does not give rise to

any plausible claim by Defendant for damages. Plainly, Defendant was obligated to pay the

margin loans extended to it, and its failure to do so cannot give rise to a claim that it was

damaged by Plaintiff's failure to follow the terms of the contract.  Defendant's counterclaim is

dismissed.  And since the first Affirmative Defense pleads Plaintiff's failure to follow the terms

of the contract constitute a defense to Plaintiff's claim for damages, Defendant's defamation

defense is duplicative, and it is stricken.

My previous order denied a previous version of Defendant's counterclaim for

defamation.  I allowed Defendant to replead to cure its failure to allege "sufficient factual detail

regarding what was disclosed, when it was disclosed, or why the disclosures were confidential."

ECF No. 65 ¶ 8 (citing *Parker Waichman LLP v. Squier, Knapp & Dunn Commc'ns, Inc.*, 28

N.Y.S.3d 603 (2016) ("The complaint's boilerplate allegations that defendants disclosed

confidential information, thereby causing harm, are too vague and conclusory to sustain a breach

of contract cause of action.")).  Defendant's second try contains the same infirmities as the first.

The counterclaim is dismissed without leave to re-plead.


**CONCLUSION**

For the reasons discussed, Plaintiff's motion to strike the affirmative defenses and

dismiss the counterclaims is granted as to the counterclaims and as to the second and third

affirmative defense.  Plaintiff's motion is denied as to the first affirmative defense.

Oral argument scheduled for November 30, 2021 is canceled.  Any amendment by

Defendant of its First Counterclaim shall be filed by November 29, 2021.  The parties shall

appear for the Initial Case Management Conference on December 10, 2021 at 10:00 am.

      The Clerk of the Court shall terminate ECF No. 74.


      SO ORDERED.

Dated:        November 15, 2021              _____/s/ Alvin K. Hellerstein_____
              New York, New York           ALVIN K. HELLERSTEIN
                                     United States District Judge