UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                                             :
INTL FCSTONE MARKETS, LLC,                                   :
                                                             :
                                                             :
                                              Plaintiff,     :
                      -against-                              :
                                                             :
INTERCAMBIO MEXICANO DE COMERCIO                             :
S.A. DE C.V.,                                                :
                                                             :
                                                             :
                                              Defendant.     :
------------------------------------------------------------ X
```

**ORDER AND OPINION GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

18 Civ. 1004 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff INTL FCStone Markets LLC, ("Plaintiff"), a financial services firm, brings this suit for breach of contract against its former client, Defendant Intercambio Mexicano de Comercio S.A. de C.V. ("Defendant"), alleging that Defendant breached the terms of their trading agreement by failing to pay margin calls. (ECF No. 68). Defendant asserts a counterclaim for breach of contract, alleging that notwithstanding its failure to pay margin calls, that Plaintiff also breached the terms of their agreement by failing to specify an Early Termination Date for closing Defendant's trading account; Defendant seeks damages for the allegedly wrongful liquidation of its account. (ECF No. 84).

Before me now is Plaintiff's motion to dismiss Defendant's counterclaim (ECF No. 92), and Defendant's cross-motion for summary judgment on both Plaintiff's claim and its counterclaim and requests a sum-certain in the amount of $359,000 (ECF No. 94). For reasons provided below, Plaintiff's motion is granted, and Defendant's motion is denied.

1

BACKGROUND

The facts underlying this dispute have been set forth in detail in prior orders, *see* ECF Nos. 34, 65, 79. I summarize only the facts necessary to resolve the instant disputes.

Plaintiff, a financial services firm, and Defendant entered into a Terms of Business Agreement (the "Agreement") on October 24, 2017. *See* Second Amended Complaint ("SAC") ¶ 9, ECF No. 68; Amended Answer ¶ 9, ECF No. 84; SAC, Exhibit A ("Ex. A"), ECF No. 68-1 (copy of the Agreement (the "Agreement")). Pursuant to the Agreement, Plaintiff agreed to provide trading services relating to swap and over-the-counter derivatives, and Defendant agreed to pay the amounts that were due. SAC ¶ 10, Answer ¶ 10. Margin calls had to be satisfied no later than 12:00 noon New York time on the next business day following the margin call. Agreement ¶¶ 2.3, 2.4. The Agreement further provided remedies in the event of a party's failure to pay:

> Upon an Event of Default, [including failure to pay,] the Performing Party may do one or more of the following with respect to the Defaulting Party:
>
> (a) Withhold or suspend all payments to the Defaulting Party required hereunder; and
>
> (b) Upon written notice to the Defaulting Party, which notice shall be given not less than two Business Days and shall not exceed thirty (30) Business Days' prior to the Early Termination Date, designate in such written notice an Early Termination Date with respect to any or all Transactions outstanding at the time immediately preceding the Early Termination Date . . . . Neither Party shall have any obligation with respect to a Terminated Transaction other than an obligation to pay a Net Settlement Amount if applicable.

*Id.* ¶ 5.1. The Agreement defined "Early Termination Date" as "a date for termination of the Agreement and all the Parties' obligations under the same, other than the obligations set forth in Sections 5.3 (Net Settlement Amount) and 5.4 (Setoff) of the Agreement." *Id.* Ex. A: Definitions. Net Settlement Amount was defined as "the single liquidated amount payable by one Party to the other, following the occurrence or designation of an Early Termination Date,

2

after netting [relevant costs, damages, and unpaid amounts]." *Id.* Ex. A: Definitions.  As to Net Settlement Amount, Section 5.3 provided, in relevant part:

> Upon the occurrence or designation of an Early Termination Date pursuant to Section 5.1(b), the Performing Party shall compute and shall notify the Defaulting Party of the Net Settlement Amount.

*Id.* ¶ 5.3.

On December 11, 2017, Plaintiff emailed Defendant a margin call for $408,980.74 and stated that the margin call had been outstanding for 4 days.  SAC ¶ 24; SAC, Exhibit D, ECF No. 68-4; Answer ¶ 24.  Defendant paid $50,000 by wire on December 11, 2017.  SAC, Exhibit E, ECF No. 68-5.

On December 12, 2017, Plaintiff emailed Defendant a written Notice of Failure to Pay, stating that "an Event of Default exist[ed] due to a failure to make a payment of $346,275.50, pursuant to Article 2.4 of the [Agreement]."  *See* SAC, Exhibits E, ECF No. 68-5, Exhibit F, ECF No. 68-6.  The Notice further stated that "if payment [wa]s not made immediately an Early Termination Date [would] be designated with respect to any and all Transaction outstanding pursuant to Article 5.1(b) of the TOB and the account [would] be liquidated."  Exhibit F.  Defendant claims not to have received the Notice and did not pay the margin call.  SAC ¶¶ 31–32; Amended Answer ¶¶ 31–32.  Plaintiff followed with additional margin calls, but Defendant did not respond, and on December 22, 2017, Defendant's positions were liquidated by virtue of stop orders.

On December 29, 2017, Plaintiff emailed a "Second Notice of Net Settlement Amount," advising Defendant that, pursuant to Article 5.3 of the Agreement, $494,500.50, was due and payable in full by January 2, 2018.  SAC ¶¶ 51–53; SAC, Exhibit H, ECF No. 68-8.  Plaintiff's notice showed the details resulting in that amount.

Defendant did not pay and objected to Plaintiff's liquidations of Defendant's positions. SAC ¶¶ 54–55; Amended Answer ¶¶ 54–55. Plaintiff filed this lawsuit for breach of contract and seeks damages to recover the amount owing.

*Defendant's Counterclaim*

Defendant admits the Agreement, denies breach, and counterclaims for breach of contract, citing Plaintiff's failure to specify an Early Termination Date prior to liquidating Defendant's account. Amended Answer ¶¶ 67–69. I previously dismissed Defendant's counterclaim, with leave to amend, based on its failure plausibly to allege damages caused by Plaintiff's alleged breach. *See* ECF No. 79.

In its amended counterclaim, Defendant alleges two theories of damages. First, Defendant claims damages in the amount of $359,000, the sum of payments that Defendant made to Plaintiff, between November 10 and December 13, 2017, to satisfy margin calls. *See* Amended Answer ¶¶ 77–84. Defendant alleges that it would have been able to withdraw these funds when its positions later increased to a value that exceeded $359,000 had Plaintiff not liquidated Defendant's account. *Id.* ¶¶ 78, 80, 82.

Second, Defendant claims damages in the amount of $1,400,000, based on lost profits associated with Defendant's futures positions in cocoa, also liquidated by Plaintiff. *Id.* ¶¶ 85–97. Defendant alleges that, as a buyer and seller of cocoa, it invested in the futures markets for cocoa (for 2000 metric tons) as a hedge against price variations, and also to ensure that it would have available quantities of cocoa at a cost that permitted profitable sales to its customers. *Id.* ¶¶ 87, 95. Defendant alleges that "[i]n 2017/2018 [it] purchased, and in 2018 received invoices, from its vendors" for purchases of cocoa "at what [D]efendant calculated as an average purchase price of USD $2,580 per metric ton[.]" *Id.* ¶ 89. Defendant alleges that it

intended to maintain its futures positions (characterized as its "policy") until the positions exceeded the calculated contractual purchase price, which occurred sometime in mid-April 2018, and at which point, Defendant alleges it would have sold its positions. *Id.* ¶¶ 90–92. However, because Plaintiff terminated Defendant's account and liquidated those positions when the price was below the calculated contractual purchase price ($1880 per metric ton), Defendant claims lost profits in the amount of $1,400,000 (($2850 - $1880 per metric ton) x 2000 metric tons). ¶¶ 95, 97.

Plaintiff moves to dismiss Defendant's counterclaim, arguing that Defendant still fails plausibly to allege damages caused by Plaintiff's failure to specify an Early Termination Date. Defendant cross-moves for summary judgment on Plaintiff's claim and its counterclaim and seeks an award of a sum certain in the amount of $359,000.

## DISCUSSION

I. Legal Standard

Fed. R. Civ. P. 13 governs counterclaims. A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a claim in the complaint. *See GEOMC Co.*, 918 F.3d at 101 (finding that district courts may evaluate the legal sufficiency of a counterclaim properly challenged in a Rule 12(b)(6) motion).

When considering a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inference in favor of the non-moving party. *See Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2016). However, it gives "no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A counterclaim is facially plausible when "the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the [original claimant] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (cleaned up). "In determining the adequacy of the [counterclaim], the court may consider any written instrument attached to the [Answer or counterclaim] as an exhibit or incorporated in the complaint by reference, as well as documents upon which the [Answer or counterclaim] relies and which are integral . . . ." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 532–33 (S.D.N.Y. 2017).

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence in the light most favorable to the party opposing summary judgment[,] . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. V. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). However, the nonmovant may not rely on conclusory allegations or unsubstantiated speculation to defeat the summary judgment motion. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

II. Analysis

    A.  Motion to Dismiss Defendant's Counterclaim

A claim for breach of contract under New York law requires allegations of: (1) an agreement, (2) adequate performance by one party, (3) breach by the other party, and (4) resulting damages. *See Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (cleaned up); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008); *see also McCormick v. Favreau*, 82 A.D. 3d 1537, 1541 (N.Y. App. Div. 2011); *accord. Twinkle Play Corp. v. Alimar Props., Ltd.*, No. 2018-10896, 186 A.D.3d 1447, N.Y. App. Div. LEXIS 5008, at *1 (N.Y. App. Div. 2d Dep't Sept. 16, 2020).

As I indicated in my prior Order, ECF No. 79, in order to proceed on its counterclaim, Defendant must allege damages plausibly caused by Plaintiff's breach. Despite having had multiple opportunities, Defendant has failed to do so.

In its Amended Answer, Defendant asserts two theories for damages. Neither is plausible. As to Defendant's claim for damages in the amount of $359,000, this sum is based on various payments that Defendant made to satisfy margin calls, occurring between November 10 and December 13, 2017. Defendant concedes that that these payments covered its own indebtedness to Plaintiff but nevertheless claims that it is entitled to have these funds returned because Defendant could have withdrawn these funds when the balance on its account became positive, in excess of $359,000. This theory fails for two reasons. First, Defendant fails to explain why it would be entitled to recover payments properly made to Plaintiff. Second, Defendant fails to explain how Plaintiff's alleged breach caused these damages. The termination of Defendant's account was triggered by Defendant's failure to meet its obligations under the Agreement, and the liquidation of Defendant's account was based on stop orders, triggered by

falling prices in its positions. As stated in my prior order, ECF No. 79, if Plaintiff had left Defendant's account open, the value of Defendant's positions would have declined even further. Defendant does not allege that its positions would have become positive within the two- to thirty-day window for setting an Early Termination Date, and in fact, does not allege any date on which its positions would have become positive. Because Defendant offers no facts suggesting that it would have been able to withdraw the $359,000, and critically, nowhere explains how Plaintiff's failure to specify an Early Termination Date actually or proximately caused Defendant's claimed losses, Defendant fails plausibly to allege damages in the amount of $359,000.

As to Defendant's alleged lost profits of $1,400,000 associated with its futures positions in cocoa, this claim also fails for two reasons. First, Defendant fails plausibly to allege that the lost profits were actually or proximately caused by Plaintiff's breach. While the liquidation of its account occurred after Plaintiff's alleged breach, Plaintiff's breach did not cause the liquidation. The liquidation resulted from Defendant's own breach—its failure to pay margin calls. Moreover, Defendant does not allege that if an Early Termination Date had been specified, it would have paid the amounts owing. Thus, Plaintiff's intervening breach, if any, did not break the chain of causation.

In addition, Defendant fails plausibly to allege that it is entitled to receive lost profits. Lost profits are consequential damages—those that are not "the direct and immediate fruits of the contract," but rather losses on "collateral business arrangements." *See Mufg Union Bank, N.A. v. Axos Bank*, 196 A.D.3d 442, 443–444 (1st Dept. 2021) (citations omitted). To recover such profits, "a plaintiff must establish that such damages were actually caused by the breach, that the particular damages were fairly within the contemplation of the parties to the

8

contract at the time it was made and that the alleged loss is capable of proof with reasonable certainty." *Awards.com v. Kinko's Inc.*, 42 AD3d 178, 178, (2007) (quotations and citations omitted).

Defendant fails plausibly to allege either that these damages were contemplated by the parties or that the loss is capable of proof with reasonable certainty. Although Defendant alleges that it held its futures positions as a matter of intent and policy, Defendant nowhere alleges that it informed Plaintiff of this intent or policy, or that Plaintiff had knowledge of the same. Therefore, Defendant has not alleged plausibly that these damages were "within the contemplation of the parties," such that the damages would have been foreseeable to Plaintiff, and for which Plaintiff should now be liable.

In addition, Defendant fails plausibly to allege that these damages are "capable of proof with reasonable certainty." Defendant's claim to lost profits rests on the unsupported assumption that Plaintiff was required to keep Defendant's account open, notwithstanding Defendant's failure to abide by the terms of the Agreement—*i.e.*, its failure to pay margin calls. *See* Amended Answer ¶ 71 ("[P]laintiff was not entitled to terminate or liquidate [D]efendant's account which thus remained open and in full force and effect."). This assumption defies logic and law. As noted above, Defendant does not allege that it would have paid the margin calls if an Early Termination Date had been specified. Indeed, Defendant admits its breach. As a matter of black letter contract law, a material breach by one party to a contract discharges the contractual obligations of the nonbreaching party. *See, e.g.*, *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 291 (S.D.N.Y. 2005). Here, Defendant failed to pay margin calls and thereby materially breached the Agreement. *See Jafari v. Wally Findlay Galleries*, 741 F. Supp. 64, 67–68 (S.D.N.Y. 1990). While Plaintiff agreed to specify an

Early Termination Date, nowhere did it agree that absent such a specification, it would hold Defendant's account open indefinitely, or even until mid-April 2018, when Defendant claims that it would have been able to liquidate its futures positions at the calculated contractual purchase price. Defendant's claim that it would have been able to recover its calculated lost profits is wholly speculative, and thus, implausible.

Accordingly, because Defendant fails plausibly to allege damages caused by Plaintiff's alleged breach, Defendant's counterclaim is dismissed with prejudice.

B. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment as to both Plaintiff's breach of contract claim and its counterclaim. Because I grant Plaintiff's motion to dismiss the counterclaim, Defendant's motion for summary judgment on its counterclaim necessarily fails. Accordingly, I address only Defendant's motion for summary judgment on Plaintiff's claim and hold that Defendant is not entitled to summary judgment on Plaintiff's claim.

Defendant argues that it is entitled to summary judgment because Plaintiff subsequently breached the Agreement when it failed to specify an Early Termination Date. However, as I have explained previously, *see* ECF No. 79, Plaintiff's breach did not—and could not—excuse Defendant's prior breach. Defendant was obligated to pay the margin calls and failed to do so. Whether Plaintiff's failure to specify an Early Termination Date also caused Defendant to suffer damages does not negate the validity of Plaintiff's claim nor vitiate Plaintiff's right to recover the monies caused by Defendant's breach. At most, Plaintiff's subsequent breach, if any, would reduce the amount Plaintiff would be entitled to recover. It would not—absent a showing that Defendant's damages were in excess of Plaintiff's damages (which Defendant fails plausibly to allege)—prevent Plaintiff from recovering some or all of its

alleged damages. Accordingly, Defendant's motion for summary judgment on Plaintiff's claim is denied.

## CONCLUSION

For the reasons discussed, Plaintiff's motion to dismiss Defendant's counterclaim is granted, and Defendant's motion for summary judgment as to Plaintiff's claim and its own counterclaim is denied. The parties shall appear for a status conference, as scheduled, on January 20, 2023, at 10:00 a.m. The Clerk of the Court shall terminate ECF Nos. 92, 94.

SO ORDERED.

Dated:  June 14, 2022  　　　　　　　　　 /s/ Alvin K. Hellertstein
        New York, New York  　　　　　　　　　ALVIN K. HELLERSTEIN
                                                       United States District Judge