**Winget | Spadafora | Schwartzberg | LLP**

NEW YORK:
45 Broadway
32nd Floor
New York, NY 10006

P (212) 221-6900
F (212) 221-6989
mellen.s@wssllp.com

August 21, 2023

**VIA ECF**
Hon. Alvin K. Hellerstein
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1050
New York, NY 10007

Defendant's objections are overruled.  Counsel may not instruct a deponent not to answer on the basis of relevance, financial privacy, inadmissibility under Fed.R.Ev. 408(a), or any combination thereof.  *See* Fed.R.Civ.P. 30(c)(2). Plaintiff shall resume its deposition.

SO ORDERED.
/s/ Alvin Hellerstein
August 24, 2023

Re:   INTL FCStone Markets, LLC v. IMCO
      Case No. 18-cv-01004-AKH

Dear Judge Hellerstein:

We represent Plaintiff, INTL FCStone Markets, LLC, in connection with the captioned matter.  We write to request the Court's intervention in resolving a discovery dispute which arose during the deposition of Defendant's principal, held on Friday, August 11.  We attempted to contact the Court via telephone on the afternoon of August 11, in an effort to ensure completion of the deposition on that date, but we understand the Court was unavailable due to handling other matters.

Because the issue at hand is a straightforward matter of Defendant's counsel instructing his witness not to provide any answers to multiple lines of questioning even though no recognized privilege was claimed, we believe this dispute is amenable to resolution without the necessity for formal briefing of a Motion to Compel Discovery, but we are of course willing to submit a formal Motion if that is the Court's preference.  Pursuant to Section 2E of Your Honor's Individual Practices, which provide that any letter presenting a dispute shall include statements of position by both counsel, we have invited Defendant's counsel to elaborate his position in the space indicated below.  In the process of drafting this letter, Defendant's counsel indicated he felt it would be "extremely unfair and prejudicial" for Defendant's position to be postponed until after ours was set forth, and thus Defendant has requested that the following summary of its position appear at the outset of the letter:

**Defendant's Position**: **[1]** Plaintiff's inquiry into Defendant's assets and ability to pay a sum allegedly due is irrelevant *and* invades Defendant's financial privacy in this narrow breach-of-contract action.  The issues are whether Plaintiff or Defendant or both breached the contract and damages.  Defendant's assets/ability to pay have nothing to do with these issues.  Inquiry into

Hon. Alvin K. Hellerstein
August 21, 2023
Page 2

them would unduly invade Defendant's financial privacy and is irrelevant. This is not a securities fraud action, only a narrow breach-of-contract action. Fed.R.Civ.P.26(b)(1) (discovery must be "relevant to any party's claim or defense"). **[2]** Plaintiff's inquiry into the parties' Jan. 4, 2018 meeting and subsequent communications invades the parties' settlement discussions and is inadmissible. Fed.R.Ev.408(a). Both parties **admit** the Jan. 4, 2018 meeting and later communications occurred **after** Defendant's account had been terminated and were efforts to **"settle"** the dispute. See attached Declaration and Deposition excerpt.

**Plaintiff's position** is as follows: As the Court is aware from prior proceedings, this case stems from Defendant's failure to pay a margin debt of approximately $500,000 in its trading account with Plaintiff. As alleged in the Second Amended Complaint, numerous margin calls were issued to Defendant throughout the month of December 2017, but Defendant failed to satisfy any of them, ultimately resulting in liquidation of the account by virtue of stop-loss orders that had been placed on Defendant's positions in order to reduce risk. Defendant's only argument in its defense is that the liquidation of the account after Defendant's breach was improper, because Defendant was never told in writing about the date on which Defendant's positions would be liquidated. Defendant selectively ignores the fact that the stop-loss orders on the positions were triggered by market movement and positions were liquidated via market movement and the stop-loss orders.

The principal line of questioning which Defendant's counsel refused to let his client answer was a very simple one: Did Defendant have the financial ability to pay the amounts due to Plaintiff under the margin calls, at any point during December 2017 or January 2018? Defendant's counsel repeatedly instructed his client not to answer any questions directed to this issue, including questions as simple as how much money Defendant had in the bank during December 2017, or whether it had an open line of credit with a financial institution at the time.[1]

When asked to justify his improper instruction to the witness, Defendant's counsel merely stated that he believed the questions to be irrelevant. We reminded counsel repeatedly on the record that a relevance objection is not a permissible ground under F.R.C.P. 30(c)(2) to instruct a witness not to answer, and we asked counsel multiple times to either assert a claim of privilege or allow the witness to answer the questions. Defendant's counsel was unwilling to elect either option, and counsel did not either terminate the deposition to file a motion for protective order or express any desire to do so. In lieu of a claim of privilege, counsel asserted that the questions were supposedly "invasive to Defendant's financial privacy," but did not allege that this constituted a claim of privilege, as it obviously does not. Indeed, asking how much money a corporate entity had in the bank six years ago is hardly even worth calling intrusive in the context of a business dispute – let alone an "invasion of privacy." This is particularly true where the entity in question

---

[1] We had explicitly indicated in our Notice of Deposition, served August 8 after Defendant finally confirmed a date for the deposition, that we expected the witness to be prepared under Rule 30(b)(6) to address "IMCO's financial ability to satisfy the margin calls at issue in this matter as of the time those demands were issued." At 10:53 a.m. on Friday, August 11 – 7 minutes before the scheduled start time of the deposition – Defendant emailed us what purported to be an objection to this topic on the grounds of relevance and "financial privacy." A copy of our Deposition Notice and Defendant's last-minute Response are annexed hereto as Attachments 1 and 2.

Winget | Spadafora | Schwartzberg | LLP

made explicit representations about its financial ability and assets, as Defendant did here in connection with Plaintiff's credit risk assessment upon account opening.

We think it is abundantly obvious that Defendant's counsel should have allowed his client to answer these questions so that the deposition could be completed last Friday. Instead, due to counsel's improper instruction, we will be obligated to resume the deposition on another day and pay the costs for not just a court reporter but also a Spanish-English interpreter, and the ultimately resolution of this long-running case will be postponed even further. The importance of avoiding this type of situation is exactly why Rule 30 prohibits instructions not to answer in nearly all circumstances.

While it should not even be necessary to discuss relevance at this juncture, since the instruction was plainly improper even assuming the relevance objection had been valid, we wish to briefly explain the basis for the line of questioning. In short, in addition to the undisputed fact that stop loss orders were triggered by market movement, if Defendant had no ability to satisfy the margin demand at any point, then Plaintiff's failure to set a date certain for liquidation would plainly be immaterial. Additionally, establishing that Defendant had no ability to pay would fully resolve any question as to whether Plaintiff's failure to specify a date certain might reduce the amount Plaintiff is entitled to recover in this action. *See* Order and Opinion Granting Plaintiff's Motion to Dismiss Counterclaim [ECF No. 104] at 10 ("At most, Plaintiff's subsequent breach, if any, would reduce the amount Plaintiff would be entitled to recover.").[2]

A secondary and related line of questioning which Defendant's counsel also refused to let his client answer related to statements made during an in-person meeting between the parties on January 4, 2018, approximately two weeks after the account was liquidated. As laid out in Plaintiff's prior submissions, it is Plaintiff's position that at this meeting, Defendant insisted the positions in its trading account be restored, Plaintiff agreed it would do so as long as Defendant posted the amount of margin necessary to maintain those positions, and Defendant declined as it still did not have the money – two weeks after the liquidation. *See* Declaration of Albert Scalla [ECF No. 102] at ¶22. We sought to ask basic questions to establish whether Defendant agreed the conversation had taken place in this manner, but counsel refused to let the witness answer, contending that this meeting was a "settlement discussion" and therefore we should not be allowed to ask any questions about collection efforts and admissions made by Defendant.

As we pointed out to counsel on the record, it simply does not make sense that Plaintiff cannot ask questions about a conversation to which Plaintiff itself was one of the parties, even if this meeting was a "settlement discussion," which we strongly maintain it was not. We were not even attempting to inquire into someone else's private conversation, but simply asking Defendant

---

[2] As the Court noted elsewhere in the same opinion, Defendant has never alleged at any point in this litigation that if a date had been specified, it would have actually paid the amounts owing. *See id.* at 8, 9. We have also submitted competent evidence demonstrating that Defendant orally admitted at the time that it did not have any money to send. *See* Declaration of Albert Scalla [ECF No. 102] at ¶17. It seems highly likely, if not certain, that Defendant had no ability to pay, and in our view it should simply admit such (and argue the relevance of that admission, if it chooses) rather than drag matters by out by refusing to answer the question even when properly propounded in discovery.

Winget | Spadafora | Schwartzberg LLP

to state whether or not it agrees with Plaintiff that certain statements were made between the two parties to this case. It was wholly inappropriate for counsel to instruct his client not to answer these questions, as none of the limited circumstances identified by Rule 30(c)(2) were even arguably present.

For these reasons, we respectfully ask that the Court authorize us to resume the deposition and complete these lines of questioning, and direct Defendant's counsel to desist from improperly instructing his witness not to answer where no privilege is applicable or even being claimed.

## DEFENDANT'S POSITION

Defendant Intercambio Mexicano de Commercio S.A. de C.V. ("IMCO") is in the business of buying, processing, and selling cocoa for use in chocolate and related products. As part of its normal business practice, because of the volatile nature of the cocoa commodities markets, IMCO often purchases futures positions in cocoa as a hedge against future price fluctuations in physical cocoa which could undermine its profits picture. This is a normal business practice among sellers of commodities. In order to hedge against these price fluctuations, Defendant IMCO opened a commodities trading account at Plaintiff FCStone pursuant to Plaintiff's solicitation.

**[1] Plaintiff's Improper Inquiry into Defendant's Assets/Ability to Pay:** Activity in IMCO's commodities account gave rise to claims of breach-of-contract, nothing more. There is no allegation of fraud, securities fraud, market manipulation, breach of trust, or anything of the sort – breach of contract only (ECF 68, Second Amended Complaint). Plaintiff alleges that Defendant failed to meet margin calls on its account, that Defendant's account was terminated and liquidated in Dec. 2017, and that Defendant allegedly owes $494,500.50 for an alleged breach of contract – which Defendant IMCO disputes.

Defendant contends its account was terminated improperly, in violation of the parties' contract. Specifically, the parties' contract requires, as a prerequisite to account termination, that Plaintiff must send a formal Notice of Default which specifies the non-payment and a date-certain for account termination to occur between 2 and 30 business days after the formal Notice (ECF 68-1 ¶ 5.1(b) – exh.A to Second Amended Complaint). Plaintiff never specified such a date-certain for account termination and admits it never did. Instead, Plaintiff contends it sent confirmations of stop-loss orders on the account, to which Defendant allegedly agreed (not so) which liquidated the account when market movements hit the stop-loss trigger points. The parties' contract authorizes Defendant to dispute and invalidate such confirmations by email within 2 business days which Defendant in fact sent. Plaintiff disputes that Defendant's emails constituted an objection to the stop-loss confirmations.

Clearly, in this straightforward breach-of-contract action, the only relevant issues are: whether the account was terminated properly, whether either party (or both) breached the contract, and damages. Neither party's assets have anything to do with these straightforward contract issues at this stage of the litigation. If Defendant breached the contract (which Defendant disputes), it

Hon. Alvin K. Hellerstein
August 21, 2023
Page 5

does not matter whether Defendant had $10 or $10 million in its bank account. The damages will be calculated, and judgment entered accordingly, regardless of Defendant's assets – assuming there was any breach by Defendant in the first place, which Defendant disputes.

Worse, Plaintiff's inquiry into Defendant's assets/ability to pay is not only irrelevant but also a serious invasion of Defendant's financial privacy. In contract litigation, parties have no right to invade an adversary's financial privacy. Plaintiff should not be permitted to probe Defendant's financial status or ability to pay what Plaintiff claims is due. This is not a judgment-enforcement proceeding. Plaintiff is not a judgment creditor at this stage in this purely contract action. Under New York law, it is ***judgment creditors*** who are permitted to identify and pursue a Defendant's assets. *Republic of Argentina v. NML Capital Ltd.,* 573 U.S. 134, 139 (2014) ("New York law entitles ***judgment creditors*** to discover 'all matter relevant to the satisfaction of a judgment,' N.Y.Civ.Prac.Law §5223, permitting 'investigation of any person shown to have any light to shed on the subject of the judgment debtor's assets or their whereabouts.' D.Siegel, New York Practice §509 p.891 (5th ed. 2011)"; emp.added).

Nor is Plaintiff accurate in contending that Defendant's counsel blocked answers on grounds of mere irrelevance. At the deposition, counsel for Defendant repeatedly allowed answers to numerous questions by Plaintiff that were irrelevant, reserving objections to trial. Mere irrelevance did not cause counsel to block answers. It was the ***combination*** of irrelevance ***and*** Plaintiff's serious invasion of Defendant's financial privacy – by Plaintiff's improper inquiry into Defendant's assets/ability to pay – that caused Defendant's counsel to object and instruct his client not to answer. In a mere contract dispute, parties should not be permitted to grill an adversary over its assets or ability to pay.

Nor is Plaintiff correct in contending that Defendant's ability to pay is somehow relevant. Plaintiff argues that Defendant's ability to pay is somehow relevant to the early termination date which the contract requires Plaintiff to designate but which Plaintiff did not. Plaintiff errs. The early termination date (which Plaintiff improperly excluded from its default notice) merely would have resulted in the termination of Defendant's account on a fixed date-certain, and judgment accordingly. Whether or not Defendant had the ability to pay on a particular date is irrelevant. The judgment would have been entered for the amount allegedly due on the early termination date, regardless of whether Defendant had the ability to pay it. Thus Plaintiff's grilling Defendant on its ability to pay was ***both*** irrelevant ***and*** a serious invasion of Defendant's financial privacy. At this stage of the litigation, Defendant should not be required to answer questions on its assets or ability to pay.

**[2] Plaintiff's Improper Inquiry Into the Parties' Settlement Discussions:** Both parties agree that Defendant's account was fully terminated and liquidated in Dec. 2017 (attached Dec. 29, 2017 letter) although the parties disagree over whether this termination and liquidation were proper. Thereafter on Jan. 4, 2018 the parties met at Defendant's office and had further communications. As shown below, both parties ***agree*** that this post-termination Jan. 4, 2018 meeting and later communications were efforts to ***"settle"*** the dispute. Settlement discussions are

Hon. Alvin K. Hellerstein
August 21, 2023
Page 6

inadmissible, and Plaintiff should not be permitted to rehash them or grill Defendant over them. Fed.R.Ev. 408(a). Otherwise, parties would be deterred from ever engaging in settlement talks.

The record is clear that ***both parties agree*** that both the Jan. 4, 2018 meeting (which occurred after the termination of Defendant's account) and all subsequent communications were settlement talks. Defendant's Sole Administrator Mauricio Vazquez acknowledges this in his attached Declaration. Plaintiff agrees. Plaintiff's Executive Vice-President in Charge of Trading Albert Scalla (who participated in the Jan. 4, 2018 meeting and later communications) testified that the Jan. 4, 2018 meeting and subsequent communications between the parties comprised efforts to ***"settle"*** the dispute. Plaintiff's Albert Scalla testified at his deposition:

> "Q: Was it accurate to state that the purpose of the meeting on January 4th [2018] and the subsequent [proposed] payment plans was to try to settle the dispute between IMCO and FCStone?
>
> "A: Yes."

(Deposition testimony of Plaintiff's Executive Vice-President in Charge of Trading, Albert Scalla, who attended the Jan. 4, 2018 meeting; excerpt attached).

Plaintiff should not be permitted to grill Defendant on the substance of what Plaintiff's own officer on the scene admits were settlement negotiations. See also the attached Declaration of Defendant's Sole Administrator Mauricio Vazquez who also attended the Jan. 4, 2018 meeting.[3]

We greatly appreciate the Court's attention to this matter.

Respectfully submitted,

/s/

Steven E. Mellen

cc:     Dennis A. Grossman, Esq. (via ECF)

---

[3] The documents attached hereto as Attachments 3 and 4 are included at the request of counsel for Defendant. We note only that both of these documents (a declaration of Defendant's principal, signed today, and an excerpt from the deposition of one of Plaintiff's employees which took place on Friday, August 18) are obviously newly-created and did not even exist at the time Defendant's counsel instructed his client not to answer questions at his own deposition. Plaintiff would note only that the deposition excerpt omits the surrounding line of questioning, in which Defendant's counsel asked the witness about the contents of the same meeting he instructed his own client not to answer questions about.

Winget | Spadafora | Schwartzberg | LLP

# ATTACHMENT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
INTL FCSTONE MARKETS, LLC,

                              Plaintiff,                      Case No.: 18-cv-01004-AKH

          -against-

INTERCAMBIO MEXICANO de COMERCIO
S.A. de C.V.,

                              Defendant.
----------------------------------------------------------------X

**PLAINTIFF'S NOTICE OF DEPOSITION**

**PLEASE TAKE NOTICE** that, pursuant to Rules 27 and 30 of the Federal Rules of Civil Procedure, Plaintiff, INTL FCStone Markets, LLC (n/k/a StoneX Markets, LLC) will take the deposition upon oral examination of Mauricio Vázquez Huitrón, on his own behalf and as designated Rule 30(b)(6) representative of Defendant Intercambio Mexicano de Comercio S.A. de C.V. ("IMCO"), to commence on August 11, 2023 at 11:00 a.m. Eastern Time, via Zoom or similar remote videoconferencing platform, and to continue day to day thereafter until completed. The deposition will be recorded by stenographic means and by videotape and will be conducted with the assistance of a Spanish-English translator duly certified to participate in matters before the United States District Court for the Southern District of New York.

In accordance with Rule 30(b)(6), the deponent shall be prepared to address the following topics: (1) the factual matters alleged in IMCO's answer and counterclaims, including amended versions of those pleadings; (2) IMCO's prior written responses to the discovery requests propounded by Plaintiff in this matter; (3) IMCO's dealings with trading firms other than Plaintiff in the commodities and swaps markets prior to the opening of the account at issue in this matter, including any disputes arising out of such dealings and/or prior litigation involving claims that

IMCO allegedly failed to pay amounts due in regards to a commodities or swaps trading account; and (4) IMCO's financial ability to satisfy the margin calls at issue in this matter as of the time those demands were issued

Dated: August 8, 2023
      New York, New York

                                    WINGET, SPADAFORA &
                                        SCHWARTZBERG, LLP

                     By:     */s/ Steven E. Mellen*
                             Steven E. Mellen, Esq.
                             45 Broadway, 32nd Floor
                             New York, New York 10006
                             (212) 221-6900

                             *Attorneys for Plaintiff*

# ATTACHMENT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

INTL FCSTONE MARKETS LLC,

          Plaintiff,

    v.

INTERCAMBIO MEXICANO
de COMERCIO S.A. de C.V.,

          Defendant.
───────────────────────────────

Case No.18-CV-1004-AKH

## **DEFENDANT'S RESPONSES TO PLAINTIFF'S DEPOSITION NOTICE**

Defendant objects to plaintiff's deposition notice served only 3 days ago as follows:

1. Mr. Vasquez is not testifying individually, is not a party individually, is not appearing individually, and is testifying only as defendant's representative pursuant to Fed.R.Civ.P 30[b][6].

2. Videotaping is not sufficiently noticed (only 3 days) and is without proper notice of the employer of the videographer.

3. Inquiry concerning defendant's counterclaims is beyond the scope of discovery, as the Court has dismissed defendant's counterclaims. Fed.R.Civ.P. 26(b)(1) (discovery must be "relevant to any party's claim or defense").

4. Inquiry concerning defendant's trading with other entities is not relevant in this straightforward contract action and thus is beyond the scope of discovery. Fed.R.Civ.P. 26(b)(1) (discovery must be "relevant to any party's claim or defense").

5. Inquiry concerning defendant's assets and/or financial abilities is irrelevant; and an undue invasion of Defendant's financial privacy in this purely contract action. Defendant's assets are not relevant to whether or not either party breached the applicable Contract and thus are not relevant to any claim or defense of a party in this purely contract action. Fed.R.Civ.P. 26(b)(1) (discovery must be "relevant to any party's claim or defense"). In addition, plaintiff is not a judgment creditor at this stage in this purely contract action. Under New

1

York law, it is ***judgment creditors*** who are permitted to identify and pursue a Defendant's assets.  *Republic of Argentina v. NML Capital Ltd.,* 573 U.S. 134, 139 (2014) ("New York law entitles ***judgment creditors*** to discover 'all matter relevant to the satisfaction of a judgment,' N.Y.Civ.Prac.Law §5223, permitting 'investigation of any person shown to have any light to shed on the subject of the judgment debtor's assets or their whereabouts.'  D.Siegel, New York Practice §509 p.891 (5th ed. 2011)"; emp.added).

Dated:  August 11, 2023

                        LAW OFFICE OF DENNIS GROSSMAN
                        Attorney for Defendant
                        INTERCAMBIO MEXICANO
                        de COMERCIO S.A. de C.V.

                            /s/Dennis Grossman
                        by:_____
                            Dennis Grossman
                        10 Bond Street  (#600)
                        Great Neck, New York 11021
                        (516) 466-6690
                        dagrossmanlaw@aol.com

                        Of Counsel to:
                        FISCHER & BURSTEIN, P.C.
                        Attorneys for Defendant
                        INTERCAMBIO MEXICANO
                        de COMERCIO S.A. de C.V.,
                        98 Cutter Mill Road  (Suite 294N)
                        Great Neck, New York 11021
                        (516) 829-1900

Case 1:18-cv-01004-AKH   Document 122   Filed 08/24/23   Page 13 of 19

## **CERTIFICATE OF EMAIL SERVICE**

     I certify that on this August 11, 2023 I served a copy of the foregoing document on the attorneys for plaintiff by email to plaintiff's attorney Steven Mellen at mellens@wssllp.com.

                              /s/Dennis Grossman

                              Dennis Grossman
10 Bond Street  (#600)
Great Neck, New York 11021
(516) 466-6690
dagrossmanlaw@aol.com

3

# ATTACHMENT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

INTL FCSTONE MARKETS LLC,

        Plaintiff,                                      Case No.18-CV-1004-AKH

      v.

INTERCAMBIO MEXICANO
de COMERCIO S.A. de C.V.,

        Defendant.

_____

## DECLARATION OF MAURICIO VAZQUEZ HUITRON

Mauricio Vazquez Huitron declares:

    1.  I am the Sole Administrator of Defendant Intercambio Mexicano de Comercio S.A. de C.V. ("IMCO").

    2.  IMCO's account at Plaintiff FCStone was terminated and liquidated in Dec. 2017. Defendant IMCO promptly objected to the termination and liquidation of its account which IMCO contends were improper, in violation of its contract with Plaintiff.

    3.  Thereafter, on or about Jan. 4, 2018 – after IMCO's account had been fully terminated and liquidated – Plaintiff's officers Albert Scalla and Jason Estrada came to IMCO's office and discussed settlement of the parties' dispute. There also were further communications between the parties to try to settle the parties' dispute after this Jan. 4, 2018 meeting.

    4.  This Jan. 4, 2018 meeting and the parties' subsequent communications – all of which occurred after the termination and liquidation of IMCO's account, to which IMCO had promptly objected – were efforts to settle the parties' dispute.

    5.  These settlement discussions unfortunately were not successful.

    6.  Defendant IMCO reserves all rights and defenses in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing are true and correct. Executed on August 21, 2023.

_____
MAURICIO VAZQUEZ HUITRON

1

# ATTACHMENT 4

```
 1
 2     UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
 3     ------------------------------------------X
 4     INTL FCSTONE MARKETS LLC,
 5                                      Plaintiff,
 6
                    -against-         Case No.
 7                                    18-CV-1004-AKH
 8     INTERCAMBIO MEXICANO de COMERCIO S.A. de C.V.,
 9                                      Defendant.
10     ------------------------------------------X
11
                                 August 21, 2023
12                               10:06 a.m.
13
14          EXCERPTS OF EXAMINATION BEFORE TRIAL of ALBERT
15     SCALLA, a witness on behalf of the Plaintiff
16     herein, pursuant to Agreement and Notice, held via
17     Zoom videoconferencing equipment, before Nicole
18     Torregrossa, a Notary Public of the State of New
19     York.
20
21
22
23
24
25
```

```
 1

 2      A P P E A R A N C E S:

 3


 4      WINGET SPADAFORA SCHWARTZBERG LLP
            Attorneys for Plaintiff
 5          45 Broadway, 32nd Floor
            New York, New York 10006
 6
        BY: STEVEN MELLEN, ESQ.
 7


 8
        FISCHER & BURSTEIN, P.C.
 9          Attorneys for Defendant
            98 Cutter Mill Road, Suite 294N
10          Great Neck, New York 11021

11      BY: STEVEN HERSCHKOWITZ, ESQ.


12


13      LAW OFFICE OF DENNIS GROSSMAN
            Attorneys for Defendant
14          10 Bond Street, #600
            Great Neck, New York 11021
15
        BY: DENNIS GROSSMAN, ESQ.
16

17

18

19

20

21

22

23

24

25
```

```
 1

 2

 3     EXCERPTS OF EXAMINATION BY MR. GROSSMAN:

 4

 5

 6          Q     What is your position at FCStone?
 7          A     I am senior vice president of trading.
 8          Q     Is that nationwide senior vice
 9     president?
10          A     Yes.
11

12

13                         *    *    *.

14

15

16          Q     Was it accurate to state that the
17     purpose of the meeting on January 4th and the
18     subsequent payment plans was to try to settle the
19     dispute between IMCO and FCStone?
20          A     Yes.
21

22

23

24

25
```